## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAY KRUISE,

               *Plaintiff-Counter-Defendant*,

    v.                                        No. 19-cv-49 (DLF)

PAUL VICTOR JORGENSEN,

               *Defendant-Counter-Claimant.*

## <u>MEMORANDUM OPINION</u>

      Jay Kruise brings this malpractice action against his former attorney, Paul Victor Jorgensen, who in turn brings counterclaims against Kruise for breach of contract and defamation. *See* Compl., Dkt. 1-1; Am. Counterclaim, Dkt. 25.  Kruise now moves for summary judgment on his claims and for dismissal of Jorgensen's counterclaims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Pl.'s Mot. for Summ. J., Dkt. 37.  Jorgensen also now moves for summary judgment on Kruise's claims as well as on Jorgensen's own counterclaims, Def.'s Mot. for Summ. J., Dkt. 38.  For the reasons that follow, the Court will (1) grant Jorgensen's motion for summary judgment as to Kruise's claims; (2) construe Kruise's motion to dismiss Jorgensen's counterclaims as a motion for summary judgment as to those claims, and grant the motion; and (3) otherwise deny both parties' motions.

## I.    BACKGROUND

### A.    Factual Background

      In December 2007, Kruise retained Jorgensen as counsel for an equal employment opportunity claim against the government related to the suspension of Kruise's security clearance. *See* Def.'s Statement of Facts ¶¶ 2, 4, Dkt. 43; Kruise Decl. ¶ 2, Dkt. 37-2 Ex. 2.  Kruise's case,

brought pro se, was originally rejected in administrative proceedings for lack of jurisdiction under *Department of the Navy v. Egan*, 484 U.S. 518 (1988).  *See* Def.'s Statement of Facts ¶¶ 4–5; Pl.'s Statement of Facts ¶¶ 4–5, Dkt. 41-2.  Once represented by Jorgensen, however, Kruise secured vacatur of that determination and remand for a decision on the merits of his claim.  Def.'s Statement of Facts ¶ 8; Pl.'s Statement of Facts ¶ 7; *see* Ex. 1 to Def.'s Mot. for Summary Judgment (*Kruise v. McHugh*, Appeal No. 0120083702 (EEOC Office of Federal Operations Apr. 6, 2011)), Dkt. 38-3.  Several years later, Kruise and the government engaged in settlement talks, and the case was referred for mediation before an Equal Employment Opportunity Commission (EEOC) administrative judge.  Def.'s Statement of Facts ¶¶ 12–13; Pl.'s Statement of Facts ¶¶ 12–13.  The parties initially reached no resolution, but after further proceedings before the EEOC, the government offered Kruise a $200,000 settlement on July 21, 2015.  Def.'s Statement of Facts ¶¶ 14, 25; Pl.'s Statement of Facts ¶¶ 14, 25.

The parties dispute whether Jorgensen promptly communicated the settlement offer to his client, Def.'s Statement of Facts ¶¶ 25–26; Pl.'s Statement of Facts ¶¶ 26–27, but they agree that Kruise was aware of the offer, at the latest, by the next day because it was broached by an EEOC administrative judge during a telephonic conference, Pl.'s Statement of Facts ¶ 27; Jorgensen Decl. ¶¶ 5–8, Dkt. 45-1.  Kruise rejected the offer, and he contends that Jorgensen advised him to do so and to instead file a lawsuit in the U.S. District Court for the District of Columbia to benefit from a precedent Jorgensen viewed as favorable, *Rattigan v. Holder*, 689 F.3d 764 (D.C. Cir. 2012). Pl.'s Statement of Facts ¶ 27.  Kruise's suit was filed on July 26, 2015, and the government later successfully moved to transfer it to the Eastern District of Virginia based on improper venue.  *See* Ex. 4 to Def.'s Mot. for Summary Judgment (Joint App'x in *Kruise v. Fanning*) at 9–38, 73–82, 272–83, Dkt. 38-6.  The agency then moved to dismiss for lack of subject matter jurisdiction, and

the court granted the motion, rejecting Kruise's reliance on *Rattigan* as out-of-circuit precedent. *Id.* at 458.

Kruise and Jorgensen then commenced an appeal to the U.S. Court of Appeals for the Fourth Circuit, but after the opening brief was filed, concerns arose over payment of legal fees. Def.'s Statement of Facts ¶ 60; Pl.'s Statement of Facts ¶ 60.  Kruise instructed Jorgensen to withdraw so that he could file a reply brief pro se, but Kruise then changed his mind and agreed to pay—on the condition that payment occur on a delayed timeline, and that Jorgensen would pay the printing expenses upfront.  Ex. 1 to Def.'s Mot. for Summary Judgment at 156–57.  After Jorgensen filed his reply, the Fourth Circuit affirmed the judgment, and Jorgensen told Kruise he would work on a petition for rehearing en banc if Kruise paid the printing and stenographer expenses Jorgensen had incurred.  *Id.* at 164.  Kruise declined and proceeded pro se, and his en banc petition was denied.  Def.'s Statement of Facts ¶¶ 63–64; Pl.'s Statement of Facts ¶¶ 63–64.

## B.     Procedural History

Kruise brought claims for malpractice, breach of contract, breach of the covenant of good faith, breach of fiduciary duty, and negligent misrepresentation in D.C. Superior Court.  *See* Compl., Dkt. 1-1.  Jorgensen removed the case to federal court, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332.  Dkt. 1.  He then counterclaimed for breach of contract and defamation based on a bar complaint Kruise filed against him.  *See* Am. Counterclaim, Dkt. 25. Both sides now move for summary judgment on Kruise's claims, Jorgensen moves for summary judgment on his counterclaims, and Kruise moves to dismiss the counterclaims.  *See* Dkts. 37–38. Because Kruise has filed his motion to dismiss well after his answer and after discovery has completed, the Court will construe it as a motion for summary judgment.  *See Flynn v. Tiede-*

*Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006) ("The decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court.").

## II.    LEGAL STANDARD

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one with potential to change the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. "If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Holcomb*, 433 F.3d at 895 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III.   ANALYSIS

### A.    Kruise's Claims

Kruise's complaint lists five different causes of action, but the Court will consider them together. Although only the first count is styled as a malpractice claim—based on Jorgensen's alleged "fail[ure] to file . . . Kruise's EEOC lawsuit in the proper court," Compl. ¶ 38—the other four similarly allege various forms of malpractice. First, the breach of contract claim alleges that Jorgensen "breached the terms" of the parties' legal representation agreement by "[falling] below the minimum standard of care for a District of Columbia barred attorney with experience and expertise in EEOC law." *Id.* ¶ 45. Second, Jorgensen allegedly breached the covenant of good

faith by charging "an excessive hourly rate for excessive hours of work" and thus violating "one or more of the District of Columbia Rules of Professional Conduct, in breach of the implied covenant of [g]ood [f]aith." *Id.* ¶ 48; *see also* D.C. Rule of Prof. Conduct 1.5.  Third, the claim for breach of fiduciary duty rests on Jorgensen's alleged failure "to act in the best interest of his client" when "failing to promptly disclose" the government's settlement offer, advising Kruise to reject it, and charging him excessive fees.  Compl. ¶¶ 50–54.  And finally, the claim for negligent misrepresentation charges Jorgensen with giving "untrue" advice regarding Kruise's likelihood of success in federal court.  *Id.* ¶¶ 55–63.

All five claims, therefore, advance a theory that Jorgensen's performance as an attorney, in various ways, fell below the relevant standard of care for a lawyer in his position.  "Where, as here, a party has alleged a claim for legal negligence and other claims that, in one form or another, restate[] the malpractice claim in tort or contract form, the District of Columbia Court of Appeals has held that the other claims 'must generally reach the same result as the underlying malpractice claim.'"  *Venable LLP v. Overseas Lease Grp., Inc.*, No. 14-02010, 2015 WL 4555372, at *3 (D.D.C. July 28, 2015) (alteration in original) (citation and internal quotation marks omitted); *see also O'Neil v. Bergan*, 452 A.2d 337, 342–43 (D.C. 1982) (holding that for tort and contract claims based on an attorney's meeting the standard of care, the same principles "are equally applicable whether the plaintiff's claim is based on tort or breach of contract" (citation omitted)); *Asuncion v. Columbia Hosp. for Women*, 514 A.2d 1187, 1191 (D.C. 1986) ("[I]n professional malpractice cases, alleged negligence and breach of contract are typically premised on the same duty of care and, as a consequence, should typically lead to the same legal result."); *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 670 n.4 (D.C. 2009) (rejecting an attempt to "recast [a] malpractice argument as also breach of contract and breach of fiduciary duty"); *Macktal v. Garde*, 111 F. Supp.

2d 18, 22 (D.D.C. 2000) ("[I]f the underlying malpractice claim fails, tort and contract claims arising from the same transaction must also fail.").

The Court concludes that all five claims fail for the same reason: Kruise has not produced any expert evidence that Jorgensen's performance fell below the standard of care. "To demonstrate that an attorney has been negligent, a party must prove: (1) that there is an attorney-client relationship; (2) that the attorney neglected a reasonable duty; and (3) that the attorney's negligence resulted in and was the proximate cause of a loss to the client." *Herbin v. Hoeffel*, 806 A.2d 186, 194–95 (D.C. 2002). For a plaintiff to establish breach of a duty of reasonable care, he "must present expert testimony establishing the standard of care unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *O'Neil*, 452 A.2d at 341.

The common knowledge exception is inapplicable here. "The kind of care and skill that can be found within the jury's common knowledge may include typical failures to act; for example, allowing the statute of limitations to run on the client's claim, or permitting entry of a default against the client." *Id.* at 342 (citations omitted). The exception does not apply when "[t]he subject matter[,] . . . coupled with the substantial amount of legal work" done for a representation, "makes the case too complex for jury analysis without expert help." *Id.* Here, none of Kruise's theories of malpractice—poor choice of venue, misguided advice to reject a settlement, excessive billing, and misjudgment as to likelihood of a suit's success in federal court—are simple enough for a jury to summarily comprehend.[1] Jorgensen's venue choice was based on complex considerations of

---

[1] Even assuming that Jorgensen's alleged one-day delay in conveying the settlement offer to Kruise would fall below the appropriate standard of care as a matter of common knowledge, Kruise has not shown any degree of damages as a result of this alleged misconduct. *See Herbin*, 806 A.2d at 194–95. It is undisputed that he learned of the settlement offer shortly after the government made it, and that he chose (under Jorgensen's advice) to reject it.

caselaw across federal Courts of Appeals.  The merits of the settlement offer (and so Kruise's prognosis in a federal lawsuit) turns on sophisticated analysis of the strength of Kruise's case.  And the question of whether Jorgensen's billing practices were excessive—absent any allegations of clear abuses, of which there are none[2]—is outside the proficiency of "a layman [who] is not likely to know . . . what fees and costs an attorney may properly and reasonably charge."  *Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr.*, 97 F. Supp. 2d 8, 12 (D.D.C. 2000).  In other words, there is no reason to believe that a jury could find it obvious that Jorgensen's venue decisions and his advice regarding the settlement offer were defective, or that his billing was excessive.

Kruise offers two responses, neither of which is availing.  First, Kruise points to cases that are inapposite here.  In *Seed Co. v. Westerman*, 840 F. Supp. 2d 116, 125-26 (D.D.C. 2012), summary judgment was denied based on a settlement offer dispute because discovery had not yet commenced.  And in *Crawford v. Katz*, 32 A.3d 418, 427–32 (D.C. 2011), unlike here, the plaintiff had retained an expert.  Second, Kruise asserts that his claims should survive at this stage because "there is no rule that requires a plaintiff to provide legal expert opinions at any stage prior to trial in order for him to proceed with his case."  Pl.'s Opp'n at 8, Dkt. 41.  That is incorrect.  To defeat summary judgment, a nonmoving party must "establish a triable issue" for the elements of his claims; for an attorney malpractice case, that includes "provid[ing] expert testimony establishing the applicable standard of care."  *Kaempe v. Myers*, 367 F.3d 958, 966–67 (D.C. Cir. 2004) (affirming grant of summary judgment for lack of expert testimony); *see also Flax v. Schertler*,

---

[2] In his reply brief, Kruise raises for the first time scattered arguments that Jorgensen violated various rules of professional conduct for billing clients and retaining payments, including by failing to deposit unearned fees into a trust account. *See* Pl.'s Reply at 2–7. The Court does not consider these arguments because "[i]t is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief."  *Scott v. Off. of Alexander*, 522 F. Supp. 2d 262, 274 (D.D.C. 2007).

935 A.2d 1091, 1107 (D.C. 2007) (same).[3]  The time to retain expert witnesses, prepare reports, and disclose them to the opposing party has long since come and gone.  *See* Scheduling Order of April 25, 2019 (ordering "plaintiff [to] disclose any expert witnesses and deliver any Rule 26(a)(2) reports on or before July 31, 2019"); Status Report of May 17, 2021, at 1–2, Dkt. 35 (reporting that "[d]iscovery, including the disclosures required by Rule 26(a) . . . is complete").  Kruise has not moved for an extension of time for discovery or provided any reason why he has not produced expert evidence.

Because Kruise has provided no expert evidence of any kind, the Court will grant Jorgensen's motion for summary judgment as to all of Kruise's claims and deny Kruise's motion for summary judgment as to the same.

### B.    Jorgensen's Counterclaims

#### 1.    *Breach of Contract*

Jorgensen first alleges that Kruise breached the parties' contract by failing to pay his final bill to Jorgensen.  Am. Counterclaim ¶¶ 44–45.  As Kruise notes, *see* Pl.'s Mot. for Summ. J. at 14–15, Jorgensen's Amended Counterclaim asserts virtually no factual detail regarding Kruise's alleged nonpayment—for example, any relevant contractual provisions regarding payment, the nature of the amount owed, or the timing of the debt.  *See generally* Am. Counterclaim.  Jorgensen

---

[3] Kruise frames all his claims in his Complaint by reference to the D.C. Rules of Professional Conduct, and his briefing on his claims applies D.C. law.  *See* Pl.'s Mot. for Summ. J. at 8. Jorgensen suggests that Maryland law might control, Def.'s Mot. for Summ. J. at 11 n.12, but the Court need not consider that argument because under the law Kruise invokes for his complaint, his claims fail.  In any event, Maryland applies the same general substantive rules.  *See, e.g.*, *Franch v. Ankney*, 670 A.2d 951, 954 n.4 (Md. 1996) ("Expert testimony as to the relevant standard of care is necessary in an attorney malpractice case, except in those cases where the common knowledge or experience of laymen is sufficient to allow the fact finder to infer negligence from the facts."); *Fishow v. Simpson*, 462 A.2d 540, 543–44 (Md. Ct. Spec. App. 1983) (rejecting recasting legal malpractice claim as breach of contract, and then holding that expert testimony was required because the common knowledge exception did not apply).

also provides no explanation when he cursorily moves for summary judgment on his counterclaims. *See* Def.'s Mot. for Summ. J. at 25, and he does not mention the merits of his breach of contract claim anywhere in his subsequent papers, *see generally* Def.'s Opp'n, Dkt. 42; Def.'s Reply, Dkt. 45. Because Jorgensen has not sufficiently addressed the issue in his opposition to Kruise's motion, *see Payne v. Salazar*, 899 F. Supp. 2d 42, 50 (D.D.C. 2012), or adequately shown why the record evidence could establish his claim at trial, *see Holcomb*, 433 F.3d at 895, the Court will enter summary judgment for Kruise.

　　　　　　2. *Defamation*

　　Jorgensen next contends that Kruise defamed him by making allegedly "false allegations" to Maryland's Attorney Grievance Commission. Am. Counterclaim ¶ 47. Jorgensen again only refers to this counterclaim in passing in his motion for summary judgment. *See* Def.'s Mot. for Summ. J. at 25. In his papers, Kruise notes that Jorgensen's allegation is that "an attorney working on Kruise's behalf" "ma[d]e the alleged defamatory statement to the Maryland Attorney Grievance Commission." Pl.'s Mot. for Summ. J. at 15. That fact clearly makes the alleged statements "absolutely privileged" because they were "filed in a judicial proceeding," such as through a "letter of complaint to then Grievance Committee of Maryland State Bar Association." *Adams v. Peck*, 415 A.2d 292, 293 (Md. 1980) (citing *Kerpelman v. Bricker*, 329 A.2d 423, 427 (Md. Ct. Spec. App. 1974)); *see also In re Spikes*, 881 A.2d 1118, 1123–24 (D.C. 2005). The privilege "protects the person publishing the defamatory statement from liability even if his purpose or motive was malicious, he knew that the statement was false, or his conduct was otherwise unreasonable." *Adams*, 415 A.2d at 293. The Court will accordingly enter summary judgment for Kruise.

## CONCLUSION

For the foregoing reasons, the Court (1) grants Jorgensen's motion for summary judgment in part, as to Kruise's claims, and denies it in part, as to Jorgensen's counterclaims; (2) construes Kruise's motion to dismiss Jorgensen's counterclaims as a motion for summary judgment and grants the motion; and (3) denies Kruise's motion for summary judgment on his claims.  Judgment is entered for Jorgensen on all counts in Kruise's Complaint, and judgment is entered for Kruise on all counts in Jorgensen's Amended Counterclaim.  A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

September 22, 2022